FILED
2021 MAR 24 AM 11:57
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MELISSA ROBERTS,<br><br>               Plaintiff,<br>v.<br><br>TIM DAHLE IMPORTS, INC, a Utah corporation, dba TIM DAHLE NISSAN,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT ON BREACH OF CONTRACT CLAIM<br><br>Case No. 2:18-CV-288 JNP<br><br>District Judge Jill N. Parrish |

Before the court is Defendant Tim Dahle Nissan's motion for summary judgment on Plaintiff Melissa Robert's breach of contract claim. (ECF No. 62.) The motion has been fully briefed and the court has considered the facts and legal arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court finds that oral argument would not be helpful or necessary and elects to determine the motion based on the written memoranda. DUCivR 7-1(f). For the reasons set forth more fully below, the court denies Defendant's motion for summary judgment.

## BACKGROUND

In August of 2014, Plaintiff applied for work at Defendant's used car dealership. (ECF No. 30 ¶¶ 10-11.) Plaintiff was hired as a sales associate and assigned to work in the Special Finance Department. (ECF No. 62-1 at 21.) Plaintiff's job involved, among other things, working with bankruptcy attorneys in the community to help the attorneys' clients purchase vehicles from Defendant's Special Finance Department. (ECF No. 62-1 at 28-35.)

When Plaintiff applied to work for Defendant she signed an Application Statement and Agreement (the "Agreement") that read, in part, as follows:

> If hired, I agree as follows: My employment and compensation is terminable at-will, is for no definite period, and my employment and compensation may be terminated by the Company (employer) at any time and for any reason whatsoever, with or without good cause at the option of either the Company or myself. *No implied, oral, or written agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the President of the Company.* No supervisor or representative of the Company, other than the President of the Company, has any authority to make agreements contrary to the foregoing. This agreement is the entire agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause, and this agreement takes place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company.

(ECF No. 68-1 at 26 (emphasis added).)

By signing the Agreement, Plaintiff acknowledged that, if hired, her employment and compensation would be "terminable at will." The Agreement says nothing, however, about the terms of Plaintiff's compensation; *how* or *what* Plaintiff would be paid in exchange for her work.

Plaintiff alleges she was to be compensated via commissions accrued for selling cars unless her commissions did not exceed minimum wage. If her commissions during a given pay period did not exceed minimum wage, she would simply be paid minimum wage. (ECF No. 68 at 5.) According to Plaintiff, prior to accepting employment with Defendant, and while meeting with her soon-to-be boss, she was told the following regarding commissions:

> I would be paid 25% of the gross on each car sold by me, with a minimum amount, or floor, for each car sold. When I was hired, the minimum amount I could receive for any sale I made was $150 (regardless of whether the deal made a profit or not).

(ECF No. 68-1 at 72.) Plaintiff's payroll summaries reflect this arrangement. (*Id.* at 28-58.)

The parties do not dispute that Plaintiff was to be paid minimum wage. (ECF No. 71 at vii & 11 n.7.) However, Defendant disputes, albeit somewhat indirectly, that Plaintiff was to be

2

paid commissions if they exceeded minimum wage. As Defendant puts it: "Defendant disputes Plaintiff had a contract right to commissions because Plaintiff specifically testified that she understood [the written Compensation Plans] did not constitute a contract." (*Id.*) Neither Defendant nor Plaintiff have provided any written document explaining how minimum wage factored into Plaintiff's compensation.

While Plaintiff was employed by Defendant she signed three separate Sales Compensation Plans (each a "Plan" and collectively, the "Plans"). (ECF No. 68-1 at 52-57 (Ex. 3, dated August 12, 2014; Ex. 4, dated December 1, 2014; and Ex. 5, dated January 20, 2015).) The first line of each Plan includes the following language: 25% of commissionable gross on sales, followed by the words "minimum commission" and a specific dollar amount of either $150 or $250. (*Id.* (August 12, 2014 Plan, "minimum commission of $150"; December 1, 2014 Plan, "minimum commission $250 per car sold"; January 20, 2015 Plan, "minimum commission of $250 per car sold").) Thereafter, the Plans contain slight variations but ultimately address the same general subject matter. The Plans identify potential bonuses and recognize other "spiffs" or incentives that might occasionally be offered. The Plans also address factors that could negatively impact compensation, including the possibility that "[c]ommissions may be split between 2 Sales professionals … who have moved the deal forward." (*Id.*) Finally, directly above the signature line, in bold typeface and set apart from other text, each of the Plans contains the following identical language: "**Management reserves the right to change the compensation plans at any time and does not constitute a contract.**" (*Id.*)

Plaintiff alleges that the information set forth in the written Compensation Plans was "similar to" the compensation formula described to her when she was initially hired and communicated to her thereafter during weekly sales meetings. (ECF No. 68-1 at 72.)

In the Amended Complaint, Plaintiff alleges that after working for approximately two weeks, Defendant reduced her pay by failing to pay her the full commissions to which she was entitled. (ECF No. 30 ¶¶ 12, 18 & 64.) Specifically, Plaintiff alleges in Count Four of the Amended Complaint: "[Plaintiff] performed under the terms of the employment contract by … selling used cars, for which she was entitled to a set commission." (*Id.* ¶ 63.) Nevertheless, "[Defendant] breached the employment contract by failing to pay [her] all of the commissions due and owing to her for sales made during her employment, including by splitting commissions she was entitled to with other salespersons or not pay her full commission." (*Id.* ¶ 64.)

In the motion before the court, Defendant has moved for summary judgment on Plaintiff's breach of contract claim. Defendant asserts that Plaintiff's breach of contract claim fails as a matter of law because the Compensation Plans are not an enforceable contract for the payment of commissions. According to Defendant, each of the Plans has a clear, conspicuous, and express contract disclaimer in addition to language reserving the right to change the compensation plan at any time, thus preventing the formation of a legally binding contract. (ECF No. 62 at 1.) Defendant also relies on the fact that Plaintiff specifically acknowledged in her deposition that the Compensation Plans were not legally binding contracts. (*Id.* at 2.)

Plaintiff disputes that the contract disclaimers in the Compensation Plans are clear and conspicuous. (ECF No. 68 at 11.) Plaintiff also disputes that the language giving Defendant "discretion to change the plans at any time" gives Defendant discretion to retroactively change the detailed compensation schemes set forth in the written Plans. (*Id.* at 14-16.)

More importantly, however, Plaintiff asserts that her breach of contract claim is not based on the written Compensation Plans. Instead, Plaintiff claims she is entitled to commission

4

payments pursuant to a unilateral agreement, enforceable under Utah law, based on the oral representations made to her when she was hired. (*Id.* at 7.)

## DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to a material fact requiring trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In considering whether genuine issues of material fact exist, the court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented. *See id*; *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991). The court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986).

Viewing the evidence in the light most favorable to the non-moving party and resolving all inferences and doubts in favor of the non-moving party, Defendant has failed to satisfy the court that Plaintiff's breach of contract claim fails as a matter of law. Even accepting Defendant's argument as true – that the Compensation Plans did not give Plaintiff a contractual right to commissions – given the alleged oral representations made to Plaintiff when she was hired and the absence of any document setting forth the terms of Plaintiff's compensation, a reasonable jury could conclude that a communication other than the Compensation Plans informed Plaintiff's understanding regarding compensation and provided the basis for the

parties' agreement. In sum, based on the evidence presented, a reasonable jury could conclude that Plaintiff and Defendant entered into a unilateral contract regarding commission payments.

Under Utah law, "for an implied-in-fact contract term to exist, it must meet the requirements for an offer of a unilateral contract." *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991). There must be a "manifestation of the employer's intent that is communicated to the employee" and it must be "sufficiently definite to operate as a contract provision." *Id.* "Furthermore, the manifestation of the employer's intent must be of such a nature that the employee can reasonably believe" that the offer is a contract term or modification. *Id.* The existence of an implied contract is normally a question of fact which turns on the objective manifestations of the parties' intent and is, therefore, primarily a jury question. *Id.* However, the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an implied contract exists." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 39, 401 (Utah 1998) (quoting *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992)).

Plaintiff claims that while meeting with Defendant's agents, prior to being hired, she was told that in exchange for working for Defendant she would be compensated as follows:

> I would be paid 25% of the gross on each car sold by me, with a minimum amount, or floor, for each car I sold. When I was hired, the minimum amount I could receive for any sale I made was $150 (regardless of whether the deal made a profit or not). Further, I was told that in the event that I did not make any sales during any pay period, I would be paid at least the minimum wage.

(ECF No. 68-1 at 72.) Plaintiff further alleges that the written Commission Plans given to her during her employment contained terms that were consistent with the oral representations made to Plaintiff when she was hired and were consistent with representations made during weekly sales meetings and meetings with Plaintiff's supervisors. (*Id.*)[1]

---

[1] Plaintiff's allegations of oral representations regarding her compensation are set forth in Plaintiff's Declaration dated May 18, 2020. (ECF No. 68-1 at 71-73.) Defendant asks the court to disregard Plaintiff's Declaration under

In response, Defendant argues that Plaintiff's alleged unilateral agreement for commission payments fails as a matter of law because: (1) any evidence of Defendant's intent to enter a unilateral agreement is negated by the terms of the Agreement – signed and acknowledged by Plaintiff – which expressly precludes any oral or outside agreement regarding compensation; and (2) any alleged oral agreement is too indefinite to support a unilateral contract. (ECF No. 71 at 10-12.) The court disagrees.

First, the court rejects Defendant's argument that "Plaintiff expressly acknowledged that any agreement regarding her compensation must be in writing signed by the President of Defendant," effectively negating any possible evidence that Defendant intended to enter into a unilateral agreement. (ECF No. 71 at 10.) In making this argument, Defendant relies on the Agreement Plaintiff signed prior to being hired. However, careful review of that document reveals that Defendant's characterization of the relevant language is overbroad.

---

the "sham affidavit rule." (ECF No. 71 at 1.) According to Defendant, the Declaration, and more specifically Plaintiff's statement that agents of Defendant represented to Plaintiff that she would earn certain commissions for selling cars, directly contradicts both her deposition testimony and her Rule 26 disclosures and is an impermissible attempt to avoid summary judgment. *Id.*

At her deposition, Plaintiff was presented with the three written Compensation Plans (described above) and was asked if those were the Plans she was "subject to while working at [Defendant]." (*Id.* at 1 n.2.) Plaintiff agreed that they were. (*Id.*) Plaintiff was then asked if she was aware of "any other commission pay plans or agreements regarding pay or commissions" that she was "subject to while working at [Defendant]," and Plaintiff responded, "no." (*Id.*)

When considered in context, the court finds that the statements in Plaintiff's Declaration are not necessarily inconsistent with her prior deposition testimony. Plaintiff maintains that the commission structure described by Defendant's agents, both when she was hired and during staff meetings, was "similar to" the written Compensation Plans presented at Plaintiff's deposition. (ECF No. 68-1 at 72-73.) Given the similarity, it is not inconceivable that a lay person such as Plaintiff might fail to appreciate that a written document (i.e., the Compensation Plan) and an oral representation (i.e., the commission structure discussed upon hire), although conveying the same or "similar" information, might be considered two distinct or different plans or agreements. Said another way, a lay person presented with a compensation plan that contains provisions and formulas that are similar to the provisions and formulas contained in another compensation plan, might easily characterize the two plans as *the same*, despite the fact that one is presented verbally and the other in writing. Accordingly, because the written Commission Plans were similar to the compensation structures discussed with Plaintiff, the court finds that the statements in Plaintiff's deposition and declaration are not sufficiently antagonistic such that the declaration must be disregarded.

Likewise, given the similarity between the alleged verbal representations made to Plaintiff when she was hired and the written Commission Plans, the court finds that Plaintiff's reliance on the written Commission Plans to calculate her damages for the purpose of discovery disclosures is not entirely unexpected nor is it inconsistent with her theory of the case.

7

When Plaintiff signed the Agreement, what she in fact acknowledged was that "no implied, oral or written agreements *contrary to the express language of this agreement* are valid unless they are in writing and signed by the President of [Defendant]." (ECF No. 68-1 at 26.) Aside from explaining that Plaintiff's "employment and compensation is at-will," the Agreement says nothing about *how* Plaintiff is to be compensated for her work. Because the Agreement says nothing about the terms of Plaintiff's compensation, the alleged oral representations of Defendant's agents – stating that Plaintiff would be paid via the commissions she earned unless those commissions did not exceed minimum wage – are not contrary to the express language of the Agreement.[2]

The court also rejects Defendant's argument that any alleged agreement regarding the payment of commissions must fail, as a matter of law, because it is too indefinite. The commission formula presented to her upon hire was specific. Plaintiff was to be paid her commissions unless they did not exceed minimum wage, and Plaintiff's commissions would be "25% of the gross on each car sold," with a minimum amount ($150 at the time she was hired) for each car sold, regardless of whether the sale made a profit or not. The court finds that these terms are not so indefinite as to preclude a reasonable jury from concluding they create a contract provision.

---

[2] Defendant cites *Sell v. Hertz Corp.*, 746 F. Supp. 2d 1206 (D. Utah 2010), as support for its claim that Plaintiff's signature and acknowledgment of the disclaimer language in the Agreement "dooms [Plaintiff's] contract claim." (ECF No. 71 at 11.) Defendant's reliance on *Sell* is misplaced. Although the court in *Sell* did conclude that no reasonable jury could find an implied contract for bonus payments given the express contract disclaimer, the disclaimer language in *Sell* is different from the language here. Among other differences, in addition to stating that the *duration* of the employee's employment and compensation was "at-will," the agreement in *Sell* specifically included the *terms* of the employee's wages and benefits. The disclaimer in *Sell* stated: "[N]o express or implied promise or guarantee with regard to the duration or terms of an employee's employment, wages or benefits [i]s binding upon the Company unless made in writing, signed by an authorized representative or management, and clearly and specifically identified as a contract of agreement." *Id.* at 1211. The agreement in this case states only that Plaintiff's "employment and compensation is at-will" and there can be no additional agreements "contrary to the express language" of this Agreement, i.e., no agreements contrary to the "at will" status of Plaintiff's employment and compensation.

Moreover, as stated previously, the Compensation Plans given to Plaintiff during her employment were consistent with and similar to the oral representations made when she was hired. Accordingly, even assuming, *arguendo*, that the written Compensation Plans fail to provide a contractual basis for commission payments, because the Plans tracked the oral representations made by Defendant's agents and are "similar to what [she] was told she would be paid," they may nonetheless be informative regarding the parameters of any implied agreement between the parties.

## CONCLUSION

Based on the foregoing, the court concludes that even assuming that the written Compensation Plans did not give Plaintiff a contractual right to commissions, a reasonable jury could find that Plaintiff and Defendant entered into a unilateral agreement for the payment of commissions that was sufficiently detailed and consistent with commission formulas described in the Compensation Plans. Therefore, Defendant's motion for summary judgment on Plaintiff's claim for breach of contract is DENIED.

DATED this 24th day of March, 2021.

BY THE COURT

Jill N. Parrish
United States District Court Judge