IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MELISSA ROBERTS,<br><br>    Plaintiff,<br><br>v.<br><br>TIM DAHLE IMPORTS, INC.,<br><br>    Defendant. | MEMORANDUM DECISION: FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE PLAINTIFF'S ADA RETALIATION CLAIM<br><br>Case No. 2:18-cv-00288-JNP-DBP<br><br>District Judge Jill N. Parrish |

Plaintiff Melissa Roberts asserted three claims against defendant Tim Dahle Imports, Inc. (Tim Dahle) under the Americans with Disabilities Act (ADA): (1) discrimination, (2) harassment, and (3) retaliation. The discrimination and harassment claims were tried to a jury, which returned a defense verdict on both causes of action. Because only equitable relief is available for the retaliation claim, it must be resolved by the court. Accordingly, the court determined that it would hear evidence on the retaliation claim during the jury trial and resolve the claim after the trial. ECF No. 150. Having considered the trial testimony and the exhibits accepted into evidence, the court finds that Roberts has not proven her retaliation claim.

**FINDINGS OF FACT**

When claims are tried to a jury and the court in the same proceeding, the court is bound by the findings of fact made by the jury. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 965 (10th Cir. 2002). But here, the jury indicated only that Roberts had failed to prove her discrimination and harassment claims. As Tim Dahle concedes, the jury verdict is a "black box," and it is not possible to know precisely what factual findings were made by the jury. Accordingly,

the court independently finds by a preponderance of the evidence the following facts based on the evidence presented at trial.

In August 2014, Roberts began her employment with Tim Dahle selling used cars. She worked in the Special Finance Department, which focused on selling cars to customers with poor credit ratings. Her compensation was based solely on commissions for cars she sold. Roberts suffers from a disorder that causes her to experience seizures periodically. Shortly after beginning her employment, Roberts experienced seizures at work. On September 10, 2014, Tim Dahle's human resources manager, Emily Gray, and general manager, Stan Foutz, met with Roberts and advised her to go home and return with a doctor's note clearing her to return to work. On September 11, 2014, Roberts visited her doctor, who advised her not to drive for three months after any seizure. The doctor provided a note indicating that she was cleared to work. Based on the doctor's note and the information provided by Roberts, Gray and Foutz cleared her to return to work. But they advised Roberts not to drive any of Tim Dahle's vehicles until her seizure disorder was under control. Roberts testified that Foutz also told her that she could not go on test drives—even if a customer drove the car—and that she could not visit the new-car side of the dealership. Gray and Foutz testified that they did not place these additional restrictions on Roberts.

Roberts continued to work for Tim Dahle for over a year after the September 2014 meeting. Through her contacts with bankruptcy attorneys, she was able to bring in large numbers of customers who had recently declared bankruptcy and needed special financing to purchase a used car. Roberts did not go on test drives with customers that she brought in. Once the customer arrived at the dealership, she would pass the potential buyer on to another salesperson who would conduct a test drive. In accord with Tim Dahle's policies, if the customer purchased the car, the commission for the sale would then be split between Roberts and the salesperson who conducted the test drive.

2

Despite routinely splitting her commissions, Roberts was very successful. She brought in customers in such large numbers that she earned the highest compensation in her department during her tenure. Indeed, passing off some of the sales duties to other employees gave her additional time to develop leads and bring in more customers.

Roberts's immediate supervisor was Ed Cameron, who ran the Special Finance Department. Roberts was in a romantic relationship with Cameron, and after the events relevant to this lawsuit, they got married. Roberts continued to experience periodic seizures at work. She complained to Cameron about some of her coworkers' insensitive behavior toward her related to her seizures. Cameron was very responsive to these complaints and corrected the coworkers. Cameron did not take any adverse actions against Roberts because of her complaints about her coworkers. Roberts also complained to Cameron about the fact that she had to split her commissions with other salespeople. Cameron never passed those complaints on to his boss, Foutz. Tim Dahle has an established process that employees can utilize to lodge complaints about discrimination or harassment. Roberts never utilized this formal complaint process.

In October 2015, Tim Dahle fired Cameron. He took a job at another company selling cars. On October 31, 2015, Roberts texted Foutz and asked if, even though she was getting a new boss, she could continue to "do her thing," meaning continue to focus on bringing in large numbers of potential customers. Foutz responded, "of course, it's good biz," meaning that Roberts was good for Tim Dahle's business. Because she was hard worker and very good at finding new customers, Foutz hoped that Roberts would continue working at Tim Dahle. But in November 2015, Roberts voluntarily quit in order to follow Cameron to his new employer.

## CONCLUSIONS OF LAW

In order to prevail on her ADA retaliation claim, Roberts must prove that (1) she "engaged in protected opposition to discrimination," (2) Tim Dahle subjected her to a materially adverse employment action, and (3) "that a causal connection existed between the protected activity and the materially adverse action." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (citation omitted). The court concludes that Roberts failed to prove the elements of her retaliation claim.

Roberts did not file a formal disability discrimination complaint through Tim Dahle's grievance procedures. Thus, the only evidence of any protected opposition to discrimination was her informal complaints to Cameron, her immediate supervisor and romantic partner, about some of her coworkers' boorish behavior and about having to split commissions. But Roberts did not produce any evidence that Cameron ever took an adverse employment action against her because of her complaints. Moreover, the court finds that Cameron never informed Foutz of Roberts's informal complaints. Foutz credibly testified that he was unaware of these complaints. Absent any knowledge of the alleged protected activity, there can be no retaliation. *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition.").

Even if Foutz had been aware of Roberts's informal complaints to Cameron, there is no evidence of any materially adverse employment action taken because of the complaints. If the court were to credit Roberts's testimony that Foutz told her that she could not go on test drives and that she could not enter the new-car side of the dealership, this conversation occurred very early in Roberts's tenure with Tim Dahle—*before* Roberts complained to Cameron. Thus, there can be

4

no causal connection between her complaints and the alleged restrictions. Additionally, Roberts's separation from her employment with Tim Dahle was not an adverse employment action. She voluntarily quit her job to follow Cameron and jointly operate a special financing department at another company selling cars. Nor is there any credible evidence that anyone at Tim Dahle attempted to push her out by making her working conditions intolerable. Quite the opposite: Foutz wanted her to stay. Because Roberts was not fired or constructively terminated, her separation from Tim Dahle was not an adverse employment action and cannot support her retaliation claim.

## CONCLUSION

In sum, the court concludes that Roberts failed to prove the essential elements of her retaliation claim. In particular, there is no credible evidence of a causal connection between a protected activity and any materially adverse employment action. Accordingly, the court finds in favor of defendant Tim Dahle on Roberts's ADA retaliation claim.

DATED September 30, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge